| | | |
|---|---|---|
| MICHAEL D. | : | |
| | : | |
| v. | : | C.A. No. 18-00426-WES |
| | : | |
| NANCY A. BERRYHILL, Acting | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on August 3, 2018 seeking to reverse the Decision of the Commissioner. On January 11, 2019, Plaintiff filed a Motion to Remand or Reverse the Decision of the Commissioner. (ECF Doc. No. 11). On February 8, 2019, the Commissioner filed a Motion for an Order Affirming the Commissioner's Decision. (ECF Doc. No. 12). On February 28, 2019, Plaintiff filed his Reply. (ECF Doc. No. 14).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's

Motion to Remand (ECF Doc. No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 12) be GRANTED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 8, 2016 (Tr. 154-160) alleging disability since December 22, 2015.  The application was denied initially on March 16, 2016 (Tr. 71-78) and on reconsideration on November 29, 2016.  (Tr. 80-91).  Plaintiff requested an Administrative Hearing.  On October 2, 2017, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. 38-58).  The ALJ issued an unfavorable decision to Plaintiff on November 16, 2017.  (Tr. 12-37).  The Appeals Council denied Plaintiff's request for review on May 8, 2018.  (Tr. 4-8).  Therefore, the ALJ's decision became final.  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in the assessment of his residual functional capacity and improperly addressed his subjective complaints.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's conclusions are supported by substantial evidence and must be affirmed.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support

the conclusion. <u>Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (<u>per curiam</u>); <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. <u>Rodriguez Pagan v. Sec'y of HHS</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Frustaglia v. Sec'y of HHS</u>, 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (<u>per curiam</u>; <u>accord</u> <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. <u>Seavey</u>, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. <u>Id.</u>; <u>accord</u>

Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified

findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final

judgment until after the completion of remand proceedings.  Id.

**IV.     THE LAW**

The law defines disability as the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The

impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity which exists in the national economy.  42 U.S.C. §

423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A.      Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence

of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel,

26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's

opinion on the nature and severity of a claimant's impairments is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in the record, the ALJ must give it controlling weight.

20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report

regarding an inability to work if it is unsupported by objective medical evidence or is wholly

conclusory.  See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may

afford them such weight as is supported by clinical or laboratory findings and other

consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the

statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20

C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe

enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  <u>Nguyen</u>, 172 F.3d at 36.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (<u>e.g.</u>, medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (<u>e.g.</u>, movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2.      Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V.      APPLICATION AND ANALYSIS**

**A.      The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ determined that Plaintiff's depression, anxiety and bipolar disorder were severe impairments. (Tr. 18-20). At Step 3, the ALJ found that Plaintiff's combined impairments

did not meet or medically equal a Listing. (Tr. 20-22). As to the RFC, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with simple, routine and repetitive work carrying out one-step to three-step tasks that are non-abstract, and neither complex nor detailed in a stable work environment that involved performing the same tasks in the same place and around the same people. (Tr. 22-30). The ALJ further found that Plaintiff must have only brief and superficial interactions with supervisors or coworkers with no requirement for teamwork or interaction with the general public. Id. At Step 4, the ALJ determined that the RFC limitations ruled out Plaintiff's past work as a bus driver. (Tr. 30). At Step 5, the ALJ determined that Plaintiff could perform other unskilled work at the light and medium exertional levels in the national economy and therefore was not disabled. (Tr. 31-32).

### B.     The ALJ's RFC Assessment is Supported by Substantial Evidence

There is no dispute that Plaintiff suffers from depression, anxiety and bipolar disorder, and that his social limitations preclude his former work as a public bus driver. He has pursued many treatment options including psychiatric medications and counseling. (Tr. 398, 471-474). He was sixty years old at his onset date on December 22, 2015. From 1988 through 2015, Plaintiff had a stable employment history driving busses for the Rhode Island Public Transit Transit Authority. He left his position as a driver after a stressful interaction with a passenger. (Tr. 400).

In January 2016, he was evaluated by Nurse Janice Archer who noted he was "unable to work" and suffered from major depression and moderate OCD. (Tr. 398-400). Then, in March 2016, he had a consultative psychological examination completed by Dr. Louis

Turchetta in connection with his DIB application. Dr. Turchetta concluded that Plaintiff could interact appropriately with coworkers and understand and carry out instructions but would be "challenged to respond appropriately to daily work pressures given his emotional issues." (Tr. 395). Roughly two weeks later, Dr. Stacey Fiore reviewed the record following Dr. Turchetta's examination and opined that Plaintiff had nonsevere, mild mental impairments. (Tr. 74-76).

In August 2016, Plaintiff sought emergency treatment for "generalized fatigue" after changing his medications and received treatment at Butler Hospital where he specifically requested assistance managing his medications because he had stopped taking them due to the side effects. (Tr. 533-534). Plaintiff's discharge summary from Butler Hospital indicated unspecified mood and anxiety disorders. (Tr. 537). He indicated feelings of hopelessness and somatic and racing thoughts, but was "well groomed, appropriately dressed, cooperative, made good eye contact and showed intact concentration, memory, intellectual functioning and judgment." (Tr. 537). Plaintiff was prescribed Lamictal, as the side effects were more favorable than his previous medication and he reported "marked mood improvement and decreased anxiety" upon discharge. (Tr. 540).

On September 25, 2016, Plaintiff underwent a "Fitness for Duty" psychological examination conducted by Dr. Chris Cunningham. (Tr. 565-585). He reported a history of unexcused absences from work due to "Dumping Syndrome" following gastric bypass. (Tr. 566-567). Dr. Cunningham administered several tests and ultimately concluded that Plaintiff no longer would be able to interact with the public, which foreclosed his return to his job as a public bus driver. (Tr. 570-571). He also noted, however, that Plaintiff's self-

reports should be scrutinized because they are suggestive of someone who is "trying to make themselves look 'worse' or with mental health problems that have a greater intensity and thereby a greater degree of negative impact in their lives." (Tr. 569).

Plaintiff then resumed treatment with West Bay Psychiatric Associates under the care of Brian Hickey, APRN. (Tr. 547-561). He was cooperative and showed no deficits in speech, perception, affect, attention/concentration insight or judgment. (Tr. 561-563). Mr. Hickey noted that Lamictal was "working well," and Plaintiff was stable. (Tr. 560). Treatment notes from March and April 2017 indicate Plaintiff was stable. (Tr. 553-555). In July 2017, Mr. Hickey adjusted Plaintiff's Lamictal dosage to help him maintain stability. Treatment records indicate Plaintiff stopped taking Lamictal and was "doing much better" as of August 2017. (Tr. 548). In October 2017, Mr. Hickey completed the "Mental Medical Assessment Form" indicating a Global Assessment of Functioning ("GAF") ranging from 64 to 66, reflecting mild symptoms but also that Plaintiff was "seriously limited" and was "unable to meet competitive standards" in 14 of 25 areas of mental functioning. (Tr. 630-632).

In November 2016, Dr. Marsha Hahn reviewed the available records in connection with Plaintiff's request for reconsideration of his DIB claim, including those from his week-long stay at Butler Hospital, and Dr. Hahn noted that while Plaintiff prefers "more independent, solitary pursuits" his social skills are "adequate for most work settings" and that he could sustain attention and concentration for two-hour periods during a normal workweek while completing simple tasks. (Tr. 84-89).

After considering the medical evidence of record, the ALJ assessed an RFC for a full range of work at all exertional levels with simple, routine and repetitive work as fully described above. In making this assessment, the ALJ was faced with varying medical opinions as to Plaintiff's functional capacity. The ALJ based his RFC determination primarily on the opinions of the state agency consulting psychologist, Dr. Hahn; consultative psychological examiner, Dr. Turchetta; and Dr. Cunningham, a psychologist who completed the Fitness for Duty examination. The ALJ noted that their assessments were entitled to great weight and favored them over the initial opinion of state agency consultant Dr. Fiore, and the assessments from Nurses Janice Archer and Brian Hickey, who treated Plaintiff. The ALJ gave less probative weight to the opinion of Dr. Fiore because additional medical evidence was received and reviewed following her opinion, and because the opinion was inconsistent with subsequent testimony and medical evidence received into the record. Further, the ALJ determined that neither Ms. Archer nor Mr. Hickey was an "acceptable medical source[1]," and, _inter alia_, that their findings of more severe restrictions were generally inconsistent with the other evidence and testimony in the record. (Tr. 29-30).

---

[1] Plaintiff takes issue with the ALJ's decision to "attribute" the opinion set forth in the "Mental Medical Assessment Form" solely to Mr. Hickey. Plaintiff contends that the form was co-signed by a psychiatrist, Dr. Charles Denby, and thus it is a treating opinion by an acceptable medical source. (ECF Doc. No. 11-1 at p. 11). The evidence in the record belies the assertion that Dr. Denby either played any role in completing that form, or in treating Plaintiff. Plaintiff testified that he was treated by Mr. Hickey every two weeks (Tr. 48) and that Mr. Hickey was responsible for administering his medication. (Tr. 50). Dr. Denby's name is typewritten on the form, but the form was completed by hand, and Mr. Hickey both printed his name and his signature in the space where Dr. Denby's name was typewritten. (Tr. 634). Thus, the fact that Dr. Denby's name was contained on the form does not transform Mr. Hickey's opinion into an "acceptable medical source" because the record does not support that Dr. Denby played any role in completing the form. See Allen v. Colvin, No. C.A. 13-781L, 2015 WL 906000 at *11 (D.R.I. Mar. 3, 2015). As a psychiatric nurse, Mr. Hickey is not an "acceptable medical source" as defined in the Regulations, but is an "other medical source" whose opinions should be evaluated in accord with SSR 06-3p.

Plaintiff challenges the ALJ's evaluation of the various treating and consulting medical opinions of record. He argues that the ALJ's RFC determination is not supported by substantial evidence regarding the limiting effects of Plaintiff's mental impairments. In his Reply Memorandum, Plaintiff emphasizes his argument that the ALJ erred by basing his conclusion on "his own lay understanding of the medical record." (ECF Doc. No. 14 at p. 1). Specifically, Plaintiff notes that the ALJ added "multiple limitations in the RFC" that Dr. Hahn did not opine to. Id. at p. 2. Although the RFC does incorporate restrictions that were not specifically set forth by Dr. Hahn, the ALJ crafted the RFC after a thorough review of the entire record. In that context, the ALJ was required to resolve conflicts in the evidence – and did so, for example, by determining that the reports of "normal" mental status in the treatment notes of Mr. Hickey were inconsistent with the assessment completed by him. These determinations are the province of the ALJ, and did not require the ALJ to interpret raw medical data or conduct a layperson's interpretation of medical jargon. The RFC was appropriately based on the relevant medical and other evidence presented to and considered by the ALJ.

Plaintiff also argues that the ALJ's conclusions were improperly based upon an outdated state agency review completed by Dr. Hahn. Plaintiff asserts that the ALJ erred in giving "great weight" to Dr. Hahn's review, and favoring it over the treatment records from West Bay Psychiatric Associates. (ECF Doc. No. 11-1 at p. 8). Plaintiff further points out that Dr. Hahn also did not have access to the Fitness for Duty examination completed by Dr. Cunningham. Id. at p. 9. In response, the Commissioner accurately notes that although Dr. Hahn's assessment was given great weight in formulating the ALJ's decision, the assessment

was not the exclusive basis for his decision, but was reviewed in the context of the entire record. (ECF Doc. No. 12-1 at pp. 13-15). In support, the Commissioner argues that the "subsequent evidence did not reflect any significant change in the Plaintiff's condition…" and thus the ALJ's decision should stand. Bianco v. Astrue, No. 09-21S, 2010 WL 2382855 at *11 (D.R.I. Apr. 20, 2010). There is adequate support in the record for this contention. The subsequent record indicated that Plaintiff was stable with adjustments to his medications. For example, Mr. Hickey's notes stated that "claimant is less depressed and getting out again, is emotionally stable and psychiatrically performs within normal limits despite isolated irritability and being occasionally 'slightly' depressed." (Tr. 30). The ALJ noted that Mr. Hickey indicated Plaintiff would "be off task for 0% of a workday, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." Id. These notes are in contrast to the form completed by Mr. Hickey that noted that Plaintiff would have "serious" "limitations in understanding and memory and marked limitations in activities of daily living." Id. The ALJ reasonably noted this was "inherently inconsistent and thus not persuasive in providing insight into the severity of the claimant's impairments and secondary limitations.…" Id. The ALJ also reasonably noted that, "Ms. Archer's conclusions are generally inconsistent with mental status examinations found in the record as a whole." and the GAF scores she assigned were "not contemporaneous with mental status examinations or progress notes…[and] are of limited evidentiary value and do not provide precise functional assessments." (Tr. 29).

Here, it is clear that the ALJ carefully considered all of the evidence before him, including medical evidence that post-dated Dr. Hahn's assessment. Although Plaintiff

points the Court to several perceived defects in the evidence and opinions supporting the RFC, the ALJ is ultimately responsible for reviewing all the relevant medical and other evidence, weighing competing opinions and resolving evidentiary conflicts. The ALJ weighed the competing evidence in this record, and Plaintiff has shown no error in his ultimate decision to favor the opinions of Dr. Hahn, Dr. Turchetta and Dr. Cunningham. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability finding. Since the ALJ's RFC assessment is based upon a reasonable interpretation of medical evidence and testimony, it is supported by substantial evidence and entitled to deference.

### C.     The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Plaintiff next contends that the ALJ failed to thoroughly consider and address his subjective complaints. (ECF Doc. No. 11-1 at p. 14). A reasonable review of the ALJ's decision, however, reveals that he fully and fairly considered Plaintiff's subjective complaints in compliance with the applicable legal standards. (Tr. 22-23). The ALJ found, for example, that Plaintiff's conditions could reasonably be expected to cause the symptoms he alleged but also noted that his self-reported statements concerning the "intensity, persistence and limiting effects" of the disabling mental limitations were not entirely consistent with the evidence contained in the record. (Tr. 23). The ALJ analyzed Plaintiff's

medical history in detail and acknowledged his history of diabetes, hypertension, sleep apnea, obesity and gastric dumping syndrome. (Tr. 18-20). Additionally, the ALJ considered the effects of Plaintiff's depression, anxiety and bipolar disorder. However, he found a disconnect between Plaintiff's complaints, the medical evidence of record and Plaintiff's reported daily activities. For instance, the ALJ noted that Plaintiff was well-groomed with adequate hygiene and able to manage money, remember to take medications, attend appointments, drive a car, use public transportation and behave appropriately with medical examiners. (Tr. 20-21, 197-198, 394, 537, 582). He also noted that Plaintiff's mental status examinations indicated that his cognitive functioning was intact. (Tr. 21). Additionally, Dr. Cunningham noted that Plaintiff's self-assessment should be viewed with caution because his answers were "consistent with someone trying to make themselves look worse." (Tr. 24). Further, Mr. Hickey indicated that Plaintiff was emotionally stable with normal sleep, fair energy and average moods. (Tr. 550, 555-560). This medical evidence all undercuts the Plaintiff's self-reported limitations.

Plaintiff next suggests that the ALJ did not "clearly articulate" specific reasons given to the weight of Plaintiff's symptoms, nor address the "vast majority" of factors set forth in SSR 16-3p. (ECF Doc. No. 14 at p. 7). Contrary to Plaintiff's arguments, the ALJ thoroughly reviewed such evidence and made several relevant observations. For example, the ALJ noted that Plaintiff reported a need for frequent breaks and absences (Tr. 23-28), but noted that collectively, Dr. Turchetta and Dr. Hahn found that "claimant would be capable of maintaining attention and concentration in two-hour intervals" and specifically noted that Dr. Turchetta did not state that Plaintiff "required unscheduled absences or

frequent work breaks." (Tr. 28). The ALJ also accurately noted that Dr. Hahn opined that Plaintiff could sustain a regular work schedule and that his social skills were "adequate for most work settings." (Tr. 27, 88-89).

In short, the ALJ was presented with conflicting medical and other evidence. While reasonable minds could differ as to the interpretation of this evidence, the issue is not whether this Court would have reached the same conclusion as did the ALJ regarding Plaintiff's credibility. Rather, the narrow issue presented is whether the ALJ's finding has adequate support in the record. The ALJ thoroughly weighed the evidence in the context of the record as a whole and in accordance with SSR 16-3p. The ALJ also adequately explained his reasoning. Since the ALJ's interpretation of Plaintiff's work history, daily activities and the limitations evidenced by his treatment records is supported by the record, such interpretation is entitled to deference and supports the ALJ's credibility determination. Plaintiff has shown no reversible error in this finding.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Remand (ECF Doc. No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 12) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford

Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 20, 2019